# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| ANGELA BOTTORFF, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No.  5:18-cv-6090 |
| TRIUMPH FOODS, LLC, | ) |
| MELLISSIA SHIBE, ROBB | ) |
| URSCHEL, and BRADLEY | ) |
| KNADLER, | ) |
| | ) |
| Defendants. | |

## COMPLAINT

Plaintiff Angela Bottorff ("Plaintiff") complains against the above-named Defendants as follows:

## PARTIES

1. Plaintiff is and at all relevant times has been a resident of St. Joseph, Missouri.

2. Defendant Triumph Foods, LLC ("Triumph Foods") is a Missouri domestic limited liability company with its principal place of business at 5302 Stockyards Expressway, St. Joseph, Missouri 64504.

3. Triumph Foods meets the definition of "employer" contained within the Family and Medical Leave Act ("FMLA").

4. Defendant Mellissia Shibe ("Shibe"), on information and belief, is a resident of the state of Missouri.

5. Shibe has at all relevant times occupied the corporate role of procurement clerk supervisor and in that capacity made decisions with respect to Plaintiff's exercise of rights under the FMLA, Plaintiff's FMLA leave, and Plaintiff's termination of employment.

6. Shibe meets the definition of "employer" contained within the FMLA.

7. Defendant Bradley Knadler ("Knadler") on information and belief, is a resident of the state of Missouri.

8. Knadler at all relevant times occupied the corporate role of director of hog procurement of Triumph Foods, and in that capacity made decisions with respect to Plaintiff's exercise of rights under the FMLA, Plaintiff's FMLA leave, and Plaintiff's termination of employment.

9. Knadler meets the definition of "employer" contained within the FMLA.

10. Defendant Robb Urschel ("Urschel"), on information and belief, is a resident of the state of Missouri.

11. Urschel has at all relevant times occupied the corporate role of senior human resources manager, and in that capacity made decisions with respect to Plaintiff's exercise of rights under the FMLA, Plaintiff's FMLA leave, and Plaintiff's termination of employment.

12. Urschel meets the definition of "employer" contained within the FMLA.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiff's cause of action arose under federal law, 29 U.S.C. § 2601, *et seq.*

14. The Court has supplemental jurisdiction over Plaintiff's additional claim pursuant to 28 U.S.C. § 1367(a) because it is so closely related to the claim in the action within the original jurisdiction of the Court that they form the same case or controversy under Article III of the United States Constitution.

15. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events, occurrences and omissions that give rise to this cause of action

occurred in this judicial district, and pursuant to 28 U.S.C. § 1391(b)(1), (c)(1) because Defendants operate a pork processing plant in St. Joseph, Missouri, conduct regular business there, are residents of the state of Missouri, and, therefore, are subject to personal jurisdiction within this judicial district.

**STATEMENT OF FACTS**

16. Plaintiff began her employment with Defendants in March 2016 as a procurement clerk.

17. Plaintiff performed her job well and to the satisfaction of her managers.

18. Plaintiff never received any written warnings or write-ups for any reason while she was employed by Defendants.

19. Plaintiff's direct manager was Defendant Shibe.

20. Plaintiff's second-level manager was Defendant Knadler.

21. Defendant Urschel is a senior human resources manager who, upon information and belief, reviewed and approved Defendants' decisions pertaining to Plaintiff's employment.

22. On or about April 14, 2017, Plaintiff began to suffer a serious health condition that required her to be hospitalized.

23. Plaintiff was hospitalized from Friday, April 14, 2017, through Wednesday, April 19, 2017.

24. On April 14, 2017, Plaintiff's sister informed Defendants that Plaintiff was hospitalized.

25. On or about Saturday, April 15, 2017, Plaintiff spoke with Defendant Shibe and informed her that Plaintiff was hospitalized.

3

26. While Plaintiff was hospitalized, Defendants completed FMLA paperwork for Plaintiff's leave of absence.

27. On Wednesday, April 19, 2017, Plaintiff spoke with Defendant Knadler and informed him that Plaintiff would be able to return to work on Monday, April 23, 2017.

28. Plaintiff's serious health condition rendered her unable to perform the functions of her employment with Defendants from April 14, 2017, until April 23, 2017.

29. Plaintiff was able to return to work on Monday, April 23, 2017, and she provided certification to Defendants of her ability to return to work.

30. Plaintiff was scheduled to return to work at 3 p.m. on April 24, 2017.

31. When Plaintiff returned to work, Defendants Shibe, Knadler, and Urschel told her to not clock in and to come to human resources for a meeting.

32. During the meeting on April 24, 2017, Defendants did not reinstate her to her position as a procurement clerk.

33. During the meeting on April 24, 2017, Defendants terminated Plaintiff's employment.

34. Plaintiff was confused as to the reason her employment was terminated. She told Defendants during the meeting that she had brought in all her FMLA documentation, and that Defendant Knadler knew that.

35. Defendants told Plaintiff her employment was being terminated because they needed somebody to work who could be dependable in their attendance.

36. Defendants told Plaintiff they were terminating her employment because she had requested time off to be in the hospital when she did not have paid time off ("PTO") accrued to be absent from work.

37. Throughout her employment, Plaintiff had been absent only a couple of times when she was sick.

38. When Plaintiff was absent during her employment, she complied with Defendants' policies and practices on calling in sick.

39. Plaintiff accrued PTO during her employment according to Defendants' policies.

40. After Plaintiff's employment termination, she received PTO for the time she was hospitalized.

41. Plaintiff informed Defendants during the termination meeting that Plaintiff has follow-up appointments with her doctors, and she needs to be able to pay for them.

42. Defendants still terminated Plaintiff's employment.

43. Upon information and belief, Defendants Shibe, Knadler, and Urschel jointly made the decision to not reinstate Plaintiff to her position as a procurement clerk and to terminate her employment.

44. Defendants Shibe, Knadler, and Urschel acted, directly or indirectly, in the interest of Defendant Triumph Foods in their decisions toward Plaintiff.

45. At all relevant times, Defendants Shibe, Knadler, and Urschel were employed by Triumph Foods and were acting within the scope of their employment and/or on behalf of Triumph Foods, and/or their conduct was approved, encouraged, and/or ratified by Triumph Foods, thereby making Triumph Foods responsible for the conduct described herein under a theory of *respondeat superior*.

**COUNT I**
**VIOLATION OF FMLA, 29 U.S.C. § 2601,** *et seq.*
**DISCRIMINATION/RETALIATION AND INTERFERENCE**
**AGAINST ALL DEFENDANTS**

5

46. Plaintiff incorporates all preceding paragraphs and allegations by reference as though fully set forth herein.

47. Plaintiff was employed by Defendants.

48. Defendants are covered employers as defined by 29 U.S.C. § 2601, *et seq.*

49. Plaintiff worked for Defendants for at least 12 months before she requested FMLA leave.

50. Plaintiff was employed by Defendants and worked more than 1,250 hours in the 12 months before she requested FMLA leave.

51. Plaintiff worked for Defendants at a location where 50 or more employees of Defendants worked within 75 miles.

52. In the 12 months preceding her termination, Plaintiff had only requested FMLA leave one time, immediately before her employment termination.

53. As an employee of Defendants, Plaintiff was eligible for FMLA leave, as defined by 29 U.S.C. § 2601, *et seq.*, and 29 U.S.C. § 2611(2)(A)-(B).

54. Plaintiff suffers from a serious health condition that required a leave of absence when she was employed by Defendants.

55. Plaintiff suffers from a serious health condition that requires continuing treatment by health care providers.

56. Plaintiff notified Defendants of her need for FMLA leave as soon as practicable after the need for leave arose.

57. Defendants were aware of Plaintiff's serious health condition and her need for FMLA leave.

58. As a result of her serious health condition, Plaintiff was required to and did take leave pursuant to 29 U.S.C. § 2601, *et seq*.

59. An eligible employee who takes FMLA leave is protected from retaliation and discrimination for exercising any right provided by the FMLA.

60. Defendants retaliated and discriminated against Plaintiff for exercising her rights under the FMLA by failing to reinstate her to her position with Defendants upon her return from leave and by terminating her employment. 29 U.S.C. § 2615(a)(2).

61. Plaintiff's exercise of FMLA rights has a causal connection to Defendant's termination of Plaintiff's employment.

62. Defendants' reasons for their treatment of Plaintiff were a pretext for their unlawful and retaliatory motives.

63. Plaintiff's serious health condition would have required her to take leave intermittently if Defendants had not terminated her employment.

64. Plaintiff notified Defendants of her need for intermittent leave to receive continuing treatment.

65. The FMLA makes it unlawful for any employer to interfere with, restrain, or deny the exercise of any right provided by the FMLA. 29 U.S.C. § 2615(a)(1).

66. Defendants interfered with and restrained Plaintiff's FMLA rights by failing to reinstate her to her position with Defendants upon her return from leave and by terminating her employment to ensure she could not exercise her FMLA rights during her employment.

67. Defendants' treatment of Plaintiff was prohibited by and violated the FMLA.

68. As a result of Defendant's unlawful conduct, Plaintiff has been damaged.

69. Plaintiff is entitled to all damages authorized by 29 U.S.C. § 2617, including lost wages and benefits, interest, liquidated damages, attorneys' fees, and equitable relief.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendants on Count I of her Complaint, for all damages recoverable under the FMLA, including lost wages and benefits, interest, liquidated damages, attorneys' fees, equitable relief, the costs of this action, and such other and further relief the Court deems just and proper.

## COUNT II
## NEGLIGENT HIRING, SUPERVISION, TRAINING, AND RETENTION
## AGAINST DEFENDANT TRIUMPH FOODS

70. Plaintiff incorporates all preceding paragraphs and allegations by reference as though fully set forth herein.

71. Triumph Foods owed a legal duty to Plaintiff to use ordinary care in hiring, training, supervising, and retaining its agents and employees, specifically Defendants Shibe, Knadler, and Urschel, so as to protect Plaintiff and others against any unreasonable risks of harm while said employees were acting within the course and scope of their employment with Triumph Foods.

72. Triumph Foods breached said duty in failing to reasonably hire, train, supervise, and retain its agents and employees, specifically Defendants Shibe, Knadler, and Urschel, regarding the handling of employee requests for and use of FMLA leave, reinstatement upon being certified to return to work, and terminating the employment of employees because they had an FMLA-protected absence.

73. Triumph Foods knew or should have known that its conduct, and that of its employees, in the handling of these matters involving the Plaintiff, all as set forth herein, involved an unreasonable risk of causing the Plaintiff damage, including, *inter alia*, lost wages, consequential damages, and emotional distress.

8

74. Triumph Foods' acts and omissions as set forth herein directly caused or contributed to cause Plaintiff severe emotional distress, or aggravated a pre-existing condition, which was both medically diagnosable and significant, so as to require medical treatment.

75. As a direct result of the acts and omissions of Triumph Foods, through its agents and employees, Plaintiff has been damaged as set forth herein.

76. The acts, conduct, and omissions of Triumph Foods, through its agents and employees, were committed with complete indifference to or in conscious disregard for the safety and well-being of Plaintiff, and by virtue of the attitude and conduct of Triumph Foods, Plaintiff is entitled to exemplary or punitive damages in an amount that will properly punish Triumph Foods and deter it and others from like conduct in the future.

WHEREFORE, Plaintiff prays for judgment in her favor and against Triumph Foods on Count II of her Complaint, for an award of compensatory and punitive damages, for pre-and post-judgment interest and costs expended, and for other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury on all causes of action in this Complaint.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Missouri, as the place of trial.

Respectfully submitted,

DYSART TAYLOR COTTER McMONIGLE
& MONTEMORE, P.C.

By: */s/ Anne E. Baggott*
Anne E. Baggott, MO #59187
Amanda Pennington Ketchum, MO #51011
Montana Koenig, MO #68454
4420 Madison Avenue, Suite 200
Kansas City, MO 64111
Phone: (816) 931-2700
Fax: (816) 931-7377
aketchum@dysarttaylor.com
abaggott@dysarttaylor.com
mkoenig@dysarttaylor.com

ATTORNEYS FOR PLAINTIFF